# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

William M. Ryan, Jr.,

    Plaintiff,

v.                                          Case No. 1:17cv353

CSX Transporation, Inc.,                 Judge Michael R. Barrett

    Defendant.

## OPINION & ORDER

This matter is before the Court upon Defendant CSX Transportation, Inc.'s Motion for Partial Summary Judgment. (Doc. 27). Plaintiff William M. Ryan, Jr. has filed a Response in Opposition (Doc. 31); and Defendant filed a Reply (Doc. 32).

## I. BACKGROUND

Plaintiff William M. Ryan, Jr. is a railroad employee formerly employed by Defendant CSX Transportation, Inc. In his Amended Complaint, Plaintiff alleges violations under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq*. and under the Federal Safety Appliance Act ("FSAA") 49 U.S.C. § 20302 *et seq* based on injuries Plaintiff claims he suffered to his left knee. Plaintiff also brings claims for retaliation under the Federal Railroad Safety Act ("FRSA") 49 U.S.C. § 20109, *et seq*.

In the early morning hours of July 30, 2015, Plaintiff was working as a conductor in the Queensgate Yard in Cincinnati, Ohio. Plaintiff and his crew were coupling cars in the yard when Plaintiff noticed a railcar ("Railcar CIGX802253") was missing the knuckle, which is a part of the coupling mechanism. (Doc. 31-1, William Ryan Aff. ¶ 5). Plaintiff

called the trim tower yardmaster and reported that the knuckle was missing. (Id. at ¶ 5). The yardmaster instructed Plaintiff to try to repair the knuckle. (Id. at ¶ 5). Plaintiff went to retrieve a replacement for the knuckle. (Id. at ¶ 6). On his way to where the supply of knuckles is located, Plaintiff discovered a discarded knuckle on ground. (Id. at ¶ 7). Plaintiff decided to use that knuckle to make the repair. (Id. at ¶ 7). Because a knuckle weighs eighty to ninety pounds, Plaintiff wanted to avoid carrying the knuckle back to Railcar CIGX802253. (Id. at ¶ 8). Plaintiff decided to use a nearby gondola car to move the knuckle. (Id. at ¶ 8). According to Plaintiff, when he placed the knuckle on a brake platform of a gondola railcar, the brake platform tilted slightly towards him and the knuckle started to fall off the platform. (Id. at ¶ 9). Plaintiff jumped back to avoid the falling knuckle. (Id. at ¶ 10). As he backed up, Plaintiff's feet became entangled in discarded brake rigging which was lying in between the rails. (Id. at ¶ 10). Plaintiff's foot skidded and he twisted his knee. (Id. at ¶ 10). Plaintiff felt pain in his knee, but continued to work. (Id. at ¶ 11). Plaintiff's pain later increased, and he was unable to work the next night. (Id. at ¶¶ 14-16). Plaintiff was off work from July 30, 2015 until April 2016.

Plaintiff claims that when he returned to work, his work was constantly scrutinized by railroad officials. (Id. at ¶ 24).

On June 9, 2016, Plaintiff was assigned to work as a remote control operator moving cars in the railyard. (Id. at ¶ 27). While on the job, LaCresha Taborn, the Superintendent of Terminals, saw Plaintiff using his cell phone. (Id. at ¶ 31). Taborn asked Plaintiff what he was doing, and Plaintiff responded that he was on his phone "just checking up on the news." (Id. at ¶ 31). Plaintiff believed that this was not a violation

of Defendant's safety policies. (Id. at ¶ 29). Defendant maintains that it was a violation of CSX Operating Rule 1001.2, which only permits limited "personal voice or text communications" when certain conditions are met. (Doc. 27-8).

Later that same day, Taborn returned while Plaintiff was performing his job duties. (Id. at ¶ 41). Taborn told Plaintiff he was violating safety rules by failing to "protect" a railroad crossing while he was moving railcars across the crossing by making sure that the crossing was clear. (Id. at ¶ 42). Taborn also told Plaintiff that he failed to visually determine that the couplers were open when he was making a coupling. (Id. at ¶ 42). Taborn informed Plaintiff that she would be accompanying Plaintiff for the remainder of his shift as a safety measure. (Id. at ¶ 41). Plaintiff believed he had complied with the rules, and informed Taborn of this. (Id. at ¶ 43). As Plaintiff continued to explain himself to Taborn, Plaintiff became frustrated. (Id. at ¶ 43). Plaintiff decided to walk away. (Id. at ¶ 44). Plaintiff claims that as he walked away, he dropped his brake stick and said under his breath, "Just let me do my G—damn job." (Id. at ¶ 44). However, Taborn claims that Plaintiff threw the brake stick at her and cursed at her. (Doc. 27-10, PAGEID# 338).

Plaintiff was charged with violating the safety rules; as well as being argumentative, using profane language, throwing a piece of company property and failing to follow instructions. (Doc. 27-9). A formal investigation hearing was held. (Doc. 27-10). The hearing officer determined that Plaintiff had violated the safety rules and Defendant's Violence in the Workplace Policy. (Doc. 27-12). On July 18, 2016, Plaintiff was dismissed in all capacities from service with Defendant effective immediately. (Id.)

3

Plaintiff appealed to Public Law Board ("PLB"), which upheld Plaintiff's termination. (Doc. 27-1).

Defendant seeks summary judgment on Plaintiff's FSAA claims (Third and Fourth Causes of Action) and FRSA claims (Fifth, Sixth, and Seventh Causes of Action). Defendant's Motion for Partial Summary Judgment is not directed toward Plaintiff's FELA claim (First and Second Causes of Action).

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. Federal Safety and Appliance Act

The FSAA imposes an absolute duty on railroads to provide and maintain certain safety appliances. *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 432 (6th Cir. 2003) (citing *Myers v. Reading Co.*, 331 U.S. 477, 485, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947); *O'Donnell v. Elgin, J. & E. Ry. Co.*, 338 U.S. 384, 390, 70 S.Ct. 200, 94 L.Ed. 187 (1949)).

Plaintiff alleges two separate violations of the FSAA: (1) a missing or defective

knuckle on Railcar CIGX802253; and (2) ladders and running boards on the gondola car which were not safe and secure. Defendant argues that Plaintiff's claims under the FSAA fail because there is no evidence that Railcar CIGX802253's alleged violation of the FSAA caused Plaintiff's knee injury; and there is no evidence that the running board on the gondola car was not secure.

To recover for a violation of the FSAA, a plaintiff need only show "(1) the statute was violated; and (2) they suffered injuries 'resulting in whole or in part' from the defective equipment." *Richards*, 330 F.3d at 432 (citing *Coray v. S. Pac. Co.*, 335 U.S. 520, 524, 69 S.Ct. 275, 93 L.Ed. 208 (1949)).

As to Railcar CIGX802253, Defendant maintains that Plaintiff has not established causation in order to prove the second element. "It is well established that the relaxed test for establishing causation for FELA cases announced in *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), also applies to FSAA claims." *Schroeder v. Grand Trunk W. R. Co.*, No. 10-14968, 2011 WL 6031945, at *7 (E.D. Mich. Dec. 5, 2011) (citing *Richards*, 330 F.3d at 433). The Sixth Circuit has instructed that in FSAA cases, the focus should be:

> on whether a reasonable jury could conclude that the defective appliance played *any* part, even the slightest, in bringing about the plaintiff's injury. This means that if a reasonable jury could find that the plaintiff's injury "was within the risk created by" the defective appliance, the plaintiff's right to a jury trial should be preserved. For example, if as a result of a defective appliance a plaintiff is required to take certain actions and he or she is injured while taking those actions, the issue of causation generally should be submitted to a jury.

330 F.3d at 437 (emphasis in original).

Defendant argues that Plaintiff injured his knee when he jumped back and stepped

on discarded brake rigging. According to Defendant, the cause of Plaintiff's injury was his decision to jump backwards without looking, not the missing or defective knuckle.

The Court concludes that the injury Plaintiff sustained to his knee was within the risk created by the missing or defective knuckle. Plaintiff was injured in the course of replacing the knuckle. In *Richards v. Consol. Rail Corp.*, the Sixth Circuit cited with approval a factually similar case decided by a Florida court which found that the plaintiff's injury was within the risk created by the defective appliance. 330 F.3d 428, 436. In that case, a brakeman was riding on a train that went into an emergency stop after two knuckles broke. *See Hendrick v. CSX Transp., Inc.*, 575 So.2d 709, 710 (Fla.Dist.Ct.App.1991). The brakeman, who was responsible for replacing the broken knuckles, injured his back when he lost his footing and slipped while carrying a new knuckle up the ballasted slope next to the track. *Id*. The court determined that the issue of causation should have been submitted to the jury to determine whether the railroad's use of the defective knuckles, in whole or in part, caused the plaintiff's injury. *Id*. at 712. Accordingly, this Court finds that a jury must determine whether but for the defective knuckle, Plaintiff never would have been required to replace the knuckle and been injured. 330 F.3d 437 (citing 757 So.2d at 712).

As to Defendant's alleged failure to equip the gondola car with safe and secure running boards, Defendant argues that Plaintiff has not shown either element necessary to establish a violation of the FSAA. Defendant explains that on the night of the injury, Plaintiff completed a PI-1A form, which is a personal injury report, and indicated that no defective equipment caused the incident. (Doc. 27-6). In addition, Defendant explains

6

that after Plaintiff was injured, the gondola car was released into service. (See Doc. 27-3, William M. Ryan, Jr., Dep., PAGEID #254). Defendant argues that as a result, Plaintiff's own actions prevented any inspection of the gondola car, and prevented any ability to prove, or defend, a claim related to the gondola car. Defendant requests an adverse inference instruction stating that Plaintiff's actions spoiled its ability to defend itself against Plaintiff's allegations regarding the gondola car.

Even absent an adverse inference, the Court finds that Plaintiff has not shown that the applicable statute was violated.[1] There is nothing in the record showing that the running board was defective other than Plaintiff's own statements that the running board tilted or shifted under the weight of the knuckle when he lifted the knuckle up and put it on the running board. Moreover, Plaintiff has not established that he suffered injuries "resulting in whole or in part" from the defective equipment. While Plaintiff was required to replace the missing knuckle, there is nothing in the record which would establish that railroad employees typically use the running boards of gondola cars to move heavy equipment from one place to another in the railyard. Therefore, there is not a sufficient factual basis for a reasonable jury to conclude that Plaintiff's injury was within the risk created by the missing knuckle.

Accordingly, Defendant's Motion is DENIED as to Plaintiff's claim under the FSAA based upon a missing or defective knuckle on Railcar CIGX802253; but GRANTED as to the claim under the FSAA based upon ladders and running boards on the gondola car

---

[1] Plaintiff relies upon the following provision of the Safety Appliance Act to establish a violation: "a railroad carrier may use or allow to be used on any of its railroad lines ... a vehicle only if it is equipped with ... secure ladders and running boards." 49 U.S.C. § 20302 (a)(1)(C).

which were not safe and secure.

## C. Federal Railroad Safety Act

Plaintiff's FRSA claim is based on two separate anti-retaliation provisions of the statute. First, Plaintiff claims that he was terminated for reporting a work-related personal injury in violation of 49 U.S.C. § 20109(a)(4), which provides:

> A railroad carrier ... may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done ... to notify ... the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee....

49 U.S.C. § 20109(a)(4). Second, Plaintiff claims he was terminated for his nine-month absence from work while following orders or a "treatment plan of a treating physician" in violation of 49 U.S.C. § 20109(c)(2), which provides:

> A railroad carrier ...may not discipline or threaten discipline to an employee ...for following orders or a treatment plan of a treating physician ...

49 U.S.C. § 20109(c)(2).

Defendant argues that Plaintiff's claims under the FRSA fail because Plaintiff's injury report, or broken knuckle report, were not contributing factors in Plaintiff's termination.

The Sixth Circuit has explained that the analysis for retaliation claims under the FRSA is as follows:

> The FRSA incorporates by reference the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, under which an employee must show that (1) he engaged in protected activity; (2) the employer knew that he engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action.

*Consol. Rail Corp. v. U.S. Dep't of Labor*, 567 F. App'x 334, 337 (6th Cir. 2014) (citing *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013)). The employee bears the initial burden, and must show "by a preponderance of the evidence that protected activity was a contributing factor in the adverse action alleged in the complaint." *Id.* (quoting 29 C.F.R. § 1982.109(a)). The burden then shifts to the employer, who must demonstrate "by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected behavior." *Id.* (quoting 29 C.F.R. § 1982.109(b)).

> It is important to note that:
>
> FRSA burden-shifting is much more protective of plaintiff-employees than the *McDonnell Douglas* framework. The plaintiff-employee need only show that his protected activity was a "contributing factor" in the retaliatory discharge or discrimination, not the sole or even predominant cause. *See* 49 U.S.C. § 42121(b)(2)(B)(ii). In other words, "a contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Ameristar Airways, Inc. v. Admin. Rev. Bd.*, 650 F.3d 562, 567 (5th Cir. 2011) (quoting *Allen*, 514 F.3d at 476 n. 3 (internal quotation omitted)).

*Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 158 (3d Cir. 2013); *Consol. Rail Corp. v. U.S. Dep't of Labor*, 567 F. App'x 334, 337 (6th Cir. 2014) (same). However, even though contributing factor is a more lenient causation standard, the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity. *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014) (citing *Consol. Rail Corp.*, 567 Fed.Appx. at 338–39)); *see also Armstrong v. BNSF Ry. Co.*, 880 F.3d 377, 382 (7th Cir. 2018) (contributing factor standard does not eliminate the need to demonstrate the existence of an improper motive).

Plaintiff claims that his protected activity—reporting the personal injury and being off work for sixteen months for treatment—was a contributing factor to his termination.

However, Plaintiff has not shown a connection between his protected activity and his termination. Plaintiff was injured on July 30, 2015, and reported the injury the same day. (Doc. 27-6, PAGEID# 310). Plaintiff was terminated almost a year later on July 18, 2016, after he had been back on the job for two months. (Doc. 27-12, PAGEID# 429). Courts considering FRSA claims have held that events separated by as little as two months are not temporally proximate. *Ortiz v. Grand Trunk W. R. Co.*, No. 13-13192, 2014 WL 4658762, at *8 (E.D. Mich. Sept. 17, 2014) (citing cases). Therefore, Plaintiff cannot establish any inference of retaliation based on the timing of the protected activity and his termination.

Plaintiff attempts to connect his injury report to his termination based on a conversation he had with co-workers in bar shortly before he returned to work. Plaintiff explains that these two co-workers told him: "they are going to be coming after you" and cautioned him that he needed to be careful. (Ryan Aff. ¶ 23). They also told Plaintiff that personal injuries adversely impact an official's work record and, potentially, their bonuses. (Id.) They suggested that Plaintiff not return to Queensgate Yard, but instead transfer to another division. (Id.) Even if the Court could properly rely on this evidence, there is no evidence in the record that a bonus calculation for one of the railroad officials was altered because of Plaintiff's knee injury.

Plaintiff also states that he was treated differently and targeted after he returned to work. (Id. at ¶ 24). Plaintiff explains that as he performed his job throughout the

Queensgate yard, he was followed by Taborn and other railroad officials. (Id.) Plaintiff also explains that he was "banner tested" more in the first several weeks back than he had been in his entire career before his injury. (Id. at ¶ 24). Defendant responds with records showing that Plaintiff was tested for compliance with its operating rules on four occasions: April 26, 2016, April 27, 2016, May 20, 2016, and June 9, 2016. (Doc. 32-4). These records show little difference between the number of occasions Plaintiff was tested in the months before reporting his injury and after returning to work from his injury. Moreover, there is no evidence showing that Plaintiff was tested more frequently than other employees who did not report a personal injury or were off work for treatment.

Plaintiff also claims that Taborn concocted the rules violations as a justification for his firing. Plaintiff states that after the incident where he confronted Taborn, she walked up to him and sarcastically said: "Don't trip over a crack. We don't want you getting hurt again." (Ryan Aff. at ¶ 44). Plaintiff also cites another occasion where a trainmaster who was briefing Plaintiff and other employees, stopped and said to Plaintiff, "don't you touch a single knuckle." (Id. at ¶ 26). The Court finds these isolated comments are not circumstantial evidence of an improper motive. Plaintiff has not shown that the comments by Taborn or the other railroad official were connected to his protected activity, or were merely intended to prevent another injury.

Even if Plaintiff had established a prima facie case of retaliation, Defendant has demonstrated by clear and convincing evidence that it would have suspended Plaintiff based on the safety rules violations and the violation of the Violence in the Workplace Policy. While Plaintiff argues that the crossings were fully covered with railcars and

didn't need to be protected, courts decline to review the merits of the discipline:

> because "federal courts do not sit as a super-personnel department that re-examines an employer's disciplinary decisions." *Kuduk*, 768 F.3d at 792 (quotation omitted). The critical inquiry in a pretext analysis "is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861–62 (8th Cir. 2009). Moreover, if the discipline was wholly unrelated to protected activity, . . . whether it was fairly imposed is not relevant to the FRSA causal analysis. "An employee who engages in protected activity is not insulated from adverse action for violating workplace rules, and an employer's belief that the employee committed misconduct is a legitimate, non-discriminatory reason for adverse action." *Richey v. City of Independence*, 540 F.3d 779, 784 (8th Cir. 2008).

*Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969-70 (8th Cir. 2017). Here, there is nothing in the record which would show that Defendant did not believe in good faith Plaintiff was guilty of the conduct justifying discharge. Operating Rule 104.3 prohibits employees from engaging in "[b]oisterous, profane, or vulgar language; or . . . [a]ltercations" while on duty or on Defendant's property. (Doc. 27-18). Defendant's Violence in the Workplace Policy prohibits employees from making "threats or acts of violence," including "[a]ctual or implied threat of har to any individual," "[l]oud, angry or disruptive behavior that creates fear or anxiety in the workplace," or "[a]ny conduct that a reasonable person would view as threatening or potentially harmful. (Doc. 27-13). Defendant's decision that Plaintiff violated these rules was premised on a hearing officer's determination which was upheld by the PLB. Defendant himself admits that he argued with Taborn, got frustrated, dropped his brake stick on the ground and cursed at her. Based on this evidence, summary judgment is warranted. *Accord Kuduk*, 768 F.3d at 793 (finding summary judgment appropriate where railroad submitted clear and

convincing evidence that it would have discharged employee whether or not he had made unrelated reports that were activity protected by the FRSA).

Moreover, these violations are factually unrelated to Plaintiff's reporting of his knee injury or the time he was off work for that injury. Whether Plaintiff believes the discipline was fairly imposed is "not relevant to the FRSA causal analysis."

Accordingly, Defendant's Motion is GRANTED as to Plaintiff's claim under the FRSA.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendant CSX Transportation, Inc.'s Motion for Partial Summary Judgment (Doc. 27) is **GRANTED in PART** and **DENIED in PART:**

1. Defendant's Motion is DENIED as to Plaintiff's claim under the Federal Safety Appliance Act based upon a missing or defective knuckle on Railcar CIGX802253; but GRANTED as to the claim under the FSAA based upon ladders and running boards on the gondola car which were not safe and secure.
2. Defendant's Motion is GRANTED as to Plaintiff's claim the Federal Railroad Safety Act.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　*/s/ Michael R. Barrett*
　　　　　　　　　　　　　　　　　　　Michael R. Barrett, Judge
　　　　　　　　　　　　　　　　　　　United States District Court